**NOT FOR PUBLICATION OR CITATION**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

CIVIL ACTION NO. 06-CV-114-HRW

ROBERT M. BROWN, JR.                                                                                          PLAINTIFF

VS:                              **MEMORANDUM OPINION AND ORDER**

BRIAN J. PATTON, Warden                                                                                    DEFENDANT

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Robert M. Brown, a prisoner who is currently in the custody of the Federal Bureau of Prisons ("BOP") and incarcerated at the Federal Correctional Institution-Ashland in Ashland, Kentucky, has submitted, *pro se*, what he has designated as a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241, and a motion to proceed *in forma pauperis*.

The matter having come before the Court for screening, it is apparent that the initial document does not concern the execution of Brown's sentence but complains of the unconstitutional conditions of his confinement. Thus, it is actually a civil rights complaint, over which this Court has jurisdiction pursuant to 28 U.S.C. §1331.

Therefore, the Court will consider the parties to be plaintiff and defendant, not petitioner and respondent, and will now proceed with the screening mandated by 28 U.S.C. §1915A. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997).

CLAIMS

Naming the FCI-Ashland warden as the sole defendant, the plaintiff claims that certain conditions of his confinement (1) amount to cruel and unusual punishment, in violation of his rights under the U.S. Constitution's Eighth Amendment; and (2) violate the BOP's own policies and proper

standards.

## RELIEF REQUESTED

The plaintiff seeks injunctive relief.

## FACTUAL ALLEGATIONS

The following is a summary or construction of the plaintiff's factual allegations as set out by him or as contained in attached exhibits. Record No. 1.

On January 21, 2006, the plaintiff filed a grievance complaining of bathroom facilities in "G Unit," where he and 139 other inmates were residing. He attaches herein a copy of the grievance, wherein he specifically complained that its 6 toilets, 6 urinals, 9 washbasins, and 9 showers were inadequate for the premises' current overcrowded conditions and violated the rated capacities for accreditation. The plaintiff also attached a page of standards for prisoner facilities, showing that the ratios should be 1 toilet, 1 washbasin, and 1 shower per each 12 inmates; and 1 urinal per 6 inmates. He concluded his grievance, "I suggest the appropriate solution is to reduce population in G Unit by 32 or in the alternative, install the appropriate number of facilities to handle the current population." Exhibit [hereinafter "Ex."] 1.

Other exhibits show that the plaintiff exhausted the administrative remedy scheme, Administrative Remedy No. 401327, regarding this matter. At the first level, the warden began with a reference to BOP Program Statement, 1060.11, Rated Capacities for Bureau Facilities, and G4200I.01, Facilities Management, conceding that they call for one toilet and one wash basin for every 12 inmates in a unit. Warden Patton then quoted findings by a 2004 Commission on Accreditation for Corrections, wherein it was admitted that 4 of the 9 units which house the general prison population at FCI-Ashland did not provide toilet facilities at the accreditation rate of one for

2

every 12 inmates; however, the next finding was that staff managed the population with a variety of work opportunities and other programs throughout the day, thereby "minimizing the use of toilets and hand-washing facilities at the same time. As a result, FCI Ashland is within policy on affording inmates adequate bathroom facilities." Ex. 2.

The higher levels of the BOP concurred. The Regional Director responded that G Unit was for temporary inmate housing and the prison was "handling this situation by providing work and program activities throughout the day." Ex. 4. The National Office felt that the warden and regional director had responded adequately and also wrote as follows:

> . . . The Bureau of Prisons has no control over the number of persons sentenced to terms of incarceration by the courts. The Bureau of Prisons has developed an exhaustive capacity expansion plan which, over time and depending on the funding appropriated by Congress, will reduce crowding levels Bureau-wide. In the interim, the ACA has determined the Bureau of Prisons' capacity expansion plan is an acceptable plan of action which mitigates the impact of capacity-related ACA standards. Bureau of Prisons' staff are working diligently to provide adequate access to restroom facilities as required by policy.
>
> There is no evidence the level of crowding has had an adverse impact upon the health or safety of any inmate.

Ex. 6.

At some point, the plaintiff was moved to a different housing unit, R Unit, which he describes as having been remodeled from an old gym in 2004 and having a similarly insufficient number of proper facilities. For its population of "a hundred or more inmates," R unit purportedly has 5 toilets, 2 urinals, 6 basins, and 4 showers. Plaintiff Brown again complained of the facilities by way of the administrative remedy program, beginning Administrative Remedy No. 409190 on April 5, 2006. Again, he requested an increase in bathroom facilities or a reduction in the unit's population.

The defendant warden's response to this grievance was that the plaintiff's allegations had been addressed in the earlier Administrative Remedy No. 401327, and so this request was being "closed" as repetitive. Ex. 8. Nonetheless, the plaintiff appealed the warden's response to the BOP's Regional Director, and he attaches a copy of the April 18, 2006 appeal which he wrote. In it, he pointed out that this is a new grievance, about a different housing unit (R unit), not the same as in his first administrative remedy (G unit). Ex. 9. Moreover, he described the R unit in more detail, including the allegation that it was initially remodeled to be a unit for educational programs and to house only 50 pre-release inmates, who would be there only 12 - 18 more months, but it is now an overcrowded regular housing unit.

Further as to this unit, the plaintiff alleged that he had been told that the "american correctional association standards and accreditation department gave [FCI-Ashland] a waiver" of the capacity requirements, but he questioned how that could be so because the unit was not even complete at the time of the Commission's visit in 2004. He also complained that regardless of the prison efforts to stagger use of the facilities during the day, all of the inmates in a unit are locked down with the inadequate facilities from 8:45 p.m. until 6:00 a.m., during which time no inmate is permitted to go to a different prison bathroom. Finally, the plaintiff contended, 4 inmates had been placed in special housing by hospital staff because of a "staph disease."

The last attachment to Brown's complaint is a two-page article, apparently from the internet, about Methicillin Resistant Staphylococcus Aureus (MRSA), which is defined as "a type of bacteria (Stafphylococcus aureus) that is resistant to many antibiotics. It is a common cause of hospital-acquired infections . . . . Careful hand washing is the single most effective way to control spread of MRSA."

The plaintiff seeks to have the defendant "comply" with his rights under the Eighth Amendment, applicable BOP policies, and ACA standards.

ORDER

The plaintiff having alleged unconstitutionally dangerous conditions in the place of his confinement and exhaustion of available administrative remedies, the Court will summon the warden to respond to the complaint.

Accordingly, **IT IS HEREBY ORDERED** as follows:

(1)     The defendant in this action is Brian J. Patton.

(2)     The Clerk in the divisional office in which the case lies shall prepare and issue summons for Brian J. Patton, in his official and individual capacities; in addition to the summons, the Clerk shall make 2 sets of copies of the summons and mark one set to be served on the United States Attorney General and one set to be served on the United States Attorney for the Eastern District of Kentucky.

(3)     The Divisional Clerk shall also prepare as many copies of the complaint as there are summonses and any required USM Forms 285.  If insufficient information exists to sufficiently or effectively complete any summons or USM Form 285 regarding any defendant, the Clerk shall promptly make a clerk's entry on the docket stating why the Clerk cannot fill out the summons or USM Form 285 or any other documents necessary to effectuate service.

(4)     After the Divisional Clerk's office has prepared the summonses, complaint copies, copies of this Order, USM Forms 285, and/or any other documents necessary to effectuate service, a Deputy Clerk shall forward said documents, by certified mail, to the United States Marshal's office in Lexington, Kentucky.

(5)   The Divisional Clerk shall enter the certified mail receipt into the instant record.

(6)   The United States Marshal shall serve a summons, complaint copy, and copy of this Order on the named defendant and shall serve copies of these documents on the United States Attorney General in Washington, D.C., and on the United States Attorney for the Eastern District of Kentucky, all service to be made by certified mail, return receipt requested.

(7)   The United States Marshal shall make a return report to the Court of whether the summons is executed or is still unexecuted within forty (40) days of the date of entry of this Order.

(8)   The plaintiff shall keep the Clerk of the Court informed of his current mailing address. Failure to notify the Clerk of any address change may result in a dismissal of this case.

(9)   For every further pleading or other document he wishes to submit for consideration by the Court, the plaintiff shall serve upon each defendant, or, if appearance has been entered by counsel, upon each attorney, a copy of the pleading or other document. The plaintiff shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed to each defendant or counsel. If a District Judge or Magistrate Judge receives any document which has not been filed with the Clerk or which has been filed but fails to include the certificate of service of copies, the document will be disregarded by the Court.

This August 8, 2006.



Signed By:
Henry R Wilhoit Jr.
United States District Judge